```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF PENNSYLVANIA


DARRYL E. WAITE,                )
                                )
        Plaintiff,              )   Civil Action No. 05-736
                                )
        v.                      )   Judge Joy Flowers Conti
                                )   Magistrate Judge Caiazza
BEAVER COUNTY, et al.,          )
                                )
        Defendants.             )
```

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

### **I. RECOMMENDATION**

The Plaintiff's twenty-seven page three count Second Amended Complaint (Doc. 32) names as Defendants Beaver County, Assistant Beaver County District Attorney Kim Tesla ("Tesla"), Beaver County Detectives Timothy Staub ("Staub") and Kimberly Clements ("Clements"), the Borough of Ambridge, current Ambridge Police Officers Rick Bufilini ("Bufilini"), Michael Slawianowski ("Slawianowski") and former Ambridge police officer, Robert Thompson ("Thompson"). (Doc. 32, ¶¶ 2-11). Waite alleges that over the period extending "from March 17, 2003 to the present" these Defendants deprived and/or conspired to deprive him of his constitutional rights in violation of 42 U. S. C. §§ 1983, 1985, and 1986. (Doc. 32, ¶14). A Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Beaver County, Tesla, Staub, and Clements (Doc. 40) is pending.[1] The court respectfully recommends

---

1. Although the Borough of Ambridge has not joined in this Motion to Dismiss, the legal analysis applicable to the claims against Beaver County applies to the Borough as well. In the interest of judicial economy, the court will address the claims made against Ambridge as though it ,too, had filed a Motion to Dismiss.

that the Motion be granted.

## II. REPORT

### A. The Legal Standard

A motion to dismiss filed pursuant to Rule 12(b)(6) will not be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).[2]

### B. Allegations

The events underlying this Complaint span a period of nearly four years, extending from March 2003 to the present. In order to provide context for its conclusions of law, the court recounts this narrative history in some detail, crediting, as it must, Waite's version of the facts. Waite alleges that his dispute with the Defendants began on March 14, 2003 when Mia Fisher ("Fisher"), his former fiancé, told Ambridge police officer Richard Heitzenrider ("Heitzenrider"), that Waite, during an argument involving infidelity and the theft of laundry detergent, admitted to multiple murders in California, and to raping his former wife. (Doc. 32, ¶18). As a result of this communication, Fisher was interviewed by Defendants Staub and Clements. Waite alleges that during the interview these defendants provided

---

2. Generally, a pro se complaint, "however inartfully pleaded" is subject to a standard of liberal review inapplicable to pleadings prepared by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Waite is no longer proceeding pro se. The Second Amended Complaint was prepared by counsel and is not, therefore, subject to the more lenient pro se standard.

Fisher with details relating to three 1988 murders in San Diego, California. They did so in order to encourage her to conform her "story" to the facts as they related them. Their goal was to trigger an investigation, making Waite a murder suspect. Waite contends that in return for Fisher's testimony, Staub and Clements offered to provide Fisher with funds through the Beaver County Women's Shelter.(Doc. 32, ¶¶ 18, 19). They arranged to have Fisher placed in that shelter and directed her to seek a Protection from Abuse Order against Waite. (Doc. 32, ¶ 20).[3]

According to Waite, Staub arranged for him to be questioned by the FBI, and began to refer to Waite as the "gay Muslim serial killer." (Doc. 32 ¶ 23). Staub allegedly used this phrase in the presence of "police officers and other Beaver officials" in an effort to enlist co-conspirators to deprive Waite of his civil rights. (Doc. 32, ¶ 22). Waite argues that these enlistment efforts were successful. Responding to Staub's influence, several Ambridge police officers, including Defendants Thompson and Bufilini, "broke into his home" on April 25, 2003, assaulted him, and "utilized racial slurs". (Doc. 32, ¶ 26). Waite was charged with "living room 'Driving Under the Influence'", and his car was impounded. (Id.)

Waite next alleges that while he was suffering from "self-diagnosed" post-traumatic stress disorder stemming from his April

---

3. Staub alleges Fisher's request for a PFA prompted him to file a petition for custody of their children. He and Fisher battled one another in a vitriolic and wide-ranging custody dispute heard in Beaver County.

arrest, he sought to defend his reputation by penning an "passionate" and "prophetic" letter dated May 1, 2003 to a state court judge who had ordered that he be evicted from his residence for nonpayment of a water bill. Although Waite also wrote a follow-up letter of apology, Defendant Staub took "biblical quotations or references" in the original letter out of context, and filed charges against Waite for making terroristic threats. Waite pled guilty to these charges. (Doc. 32, ¶¶ 27-28).

Later in May 2003, Waite apparently stood trial on the charges filed against him in April. When his public defender sought Waite's involuntary commitment to a mental facility, Waite hired a private attorney. This attorney allegedly told Waite that while they were waiting for the trial to begin, Tesla and Ambridge police officers jokingly referred to Waite as a "gay Muslim serial killer" and a "racist killer". They also said that Waite had to be placed in custody because "he planned on driving around and killing white people." (Doc. 32, ¶ 31).

Waite's next encounter with the Defendants occurred on June 18, 2003 when he was arrested for Disorderly Conduct and Public Drunkenness (Doc. 32, ¶32) by Officer Jameson ("Jameson"). Jameson – who, oddly enough, is not named as a Defendant – allegedly "jumped out of his squad car and tackled Mr. Waite for allegedly 'talking to himself' and 'uttering biblical verses in a public place.'" (Id.). Waite states that Jameson made a derogatory comment about "Allah" during the preliminary hearing on these charges. (Id.).

In October 2003, Staub and a California homicide detective interrogated Fisher and members of Waite's family regarding the 1988 murders. Waite alleges that these interviews were prompted by Fisher's unsupported allegations, and that they "destroyed life-long bonds that Mr. Waite had with his family", causing him to suffer "great anxiety, fear, stress and degradation." (Doc. 32, ¶ 33). Waite provided DNA in order to end the ordeal. At the end of October, Beaver County officials were notified that Waite had been eliminated as a murder suspect. They did not share this news with Waite. Waite alleges that as late as the summer of 2004, Staub and Clements led him to believe that the California homicide investigation was active, and that he was also under investigation for murders in Florida.

On December 23, 2003, Fisher visited Waite to confess her role in initiating the California murder investigation, and to tell him that Staub was trying to frame him.(Doc. 32, ¶ 35). It was then that Waite first suspected that there was a conspiracy against him.

A period of relative calm existed until October 30, 2004. Waite states that on that day he set out to visit friends, but "accidentally" entered a virtually identical apartment building, "startling the occupants therein." (Doc. 32, ¶ 37). Defendant Slawianowski investigated the incident and ultimately arrested Waite who refused to return to the apartment building for identification. The Plaintiff claims that Slawianowski used excessive force during the inquiry, and called him a "faggot

killer".(Id.). Waite was ultimately charged with Aggravated Assault, Resisting Arrest, Disorderly Conduct and Public Drunkenness. The Complaint does not reveal the disposition of these charges.

On December 19, 2004, Fisher was allegedly prompted by Thompson and Slawianowski to fabricate an assault charge against Waite. (Doc. 32, ¶39). Next, on January 5, 2005, Bufilini charged Waite with witness intimidation in connection with the alleged assault on Fisher. Waite states that Tesla used Fisher's testimony in the witness intimidation case despite knowing that she had provided false information with respect to the California murder investigation. (Doc. 32, ¶ 41). He also alleges that Tesla engaged in other improper conduct, including having hearings postponed and suborning perjury by a bail bondsman, in various criminal proceedings over the ensuing months. (Doc. 32, ¶¶44-48). In addition, Tesla purportedly failed to file criminal charges against Fisher for a myriad of offenses against Waite, including an attempt to douse him with cooking oil and set him ablaze. (Doc. 32, ¶ 49). These general allegations are not the subject of a particular claim for relief.

Based on these convoluted factual averments, Waite alleges three causes of action. Count I alleges violations of 42 U.S.C. §1983 in connection with four separate incidents: 1) Waite's April 25, 2003 arrest by Defendants Thompson and Bufilini, who acted "in concert with [Defendants] Tesla, Staub and Clements" in accordance with municipal policy, custom and practice to "harass,

assault and further deprive African-Americans of their rights" (Doc. 32, ¶53); 2) his June 18, 2003 arrest by non-party Officer Jameson, who also acted "in concert" with Tesla, Staub and Clements and in accordance with municipal custom, policy, and practice (Doc. 32, ¶ 56); 3) his October 30, 2004 arrest by Defendant Slawianowski pursuant to a conspiracy that included the other defendants (Doc. 32, ¶¶ 61-65; and 4) the arrest made by Defendants Thompson and Slawianowski on December 19, 2004 (Doc. 32, ¶¶ 67-68)in concert with the other defendants and in furtherance of a policy to harass African-Americans, and "subdue free expression of opinion and speech". (Doc. 32, ¶ 68).

Count II of the Complaint contains allegations of a conspiracy in violation of 42 U.S.C. § 1985, and Count III is a claim under 42 U.S.C. § 1986 against Beaver County and the Borough of Ambridge for failing to prevent the conspiracy alleged in Count II.

### C. Analysis

#### 1. Count I - the Section 1983 Claims

##### a. The Individual Defendants

Tesla, Staub, and Clements ask that the Section 1983 claims against them be dismissed because the Complaint does not allege tat they were personally involved in any of the four alleged incidents underlying those claims. *See generally*, Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)( holding that personal involvement must be alleged for Section 1983 claim).

This argument is based on a misreading of the Complaint. Waite's section 1983 claims against these defendants are not premised on their actual participation in any of the four allegedly illegal arrests. Instead, the focus of the claims is on the defendants' alleged participation in a conspiracy with those who effected the arrests.

In order to establish a section 1983 conspiracy claim, a plaintiff must allege: 1) the existence of a conspiracy involving state action; and 2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. Panayotides v. Rabenold, 35 F. Supp. 2d 411, 419 ( E.D. Pa. 1999), *aff'd*, 210 F.3d 358 (3d Cir. 2000). In order to establish the first element of the claim, a plaintiff must allege "a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose." Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000)(quoting Hammond v. Creative Financial Planning Org., 800 F. Supp. 1244, 1248 (E.D. Pa. 1992)). "Central to any conspiracy claim are specific factual allegations that 'there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end.'" Startzell v. City of Philadelphia, No.05-05287, 2007 WL 172400 at *17 (E.D. Pa. Jan. 18, 2007)(internal citation omitted).

The court has carefully dissected Wait's Complaint. The only alleged link between Tesla, Staub, or Clements and the conduct of Ambridge police officers involved in the four arrests

-8-

underlying Waite's section 1983 claim is too weak to support the conspiracy claim. The most specific allegation involving these Defendants reads as follows: "Staub . . . referred to Mr. Waite to his colleagues [sic], such as police officers and other Beaver officials as 'the gay Muslim serial killer'. This demonstrated . . . how Staub enlisted his co-conspirators in an effort to deprive Mr. Waite of his civil rights." (Doc. 32, ¶ 22). Elsewhere in the Complaint Waite clarifies that the phrase was used by Tesla and the police officers involved in the "living room DUI" arrest - presumably Bufilini and Thompson - "jokingly" at the Beaver County Jail. (Doc. 32 ¶ 31). The only other "specific" conspiracy allegation in the Complaint is that racial slurs used by Thompson and Bufilini during the DUI arrest "demonstrate how Staub had influenced the various officers." (Doc. 32 ¶ 26). Staub is not alleged to have made any race-based statement, and there is nothing in the Complaint to suggest that racial or religious slurs used by Ambridge police officers during any of the arrests originated with Staub or reflected views other than those held by the individual officers.

    The allegations relevant to conspiracy do not mention Tesla and Clements, and are insufficient to establish a conspiracy claim against even Staub. The only inference that might reasonably be drawn from the allegations regarding Staub is that he made inappropriate comments. That others repeated these comments or adopted his view of Waite is not enough to establish a conspiracy. To conclude otherwise, the court would be required

to engage in speculation far beyond the parameters of the Complaint. The section 1983 claims against Tesla, Staub, and Clements should be dismissed.

### b. **The Municipal Defendants**

The section 1983 claims against Beaver County and the Borough of Ambridge should also be dismissed. To establish municipal liability under section 1983, the alleged unconstitutional action must implement or execute "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or be "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1977). A custom, which lacks the formal approval of a policy, can be established by evidence showing "practices . . . so permanent and well settled as to constitute 'custom or usage' with the force of law." Id. at 690. In Simmons v. City of Philadelphia, 947 F.2d 1042, 1064 (3d Cir. 1991) the Court held that a municipality may be found liable for Section 1983 violations where "officials determined . . . to be the responsible policymakers" were aware of the alleged practices of their subordinates, as well as alternatives to such practices, and that they "either deliberately chose not to pursue these alternatives or acquiesced in a long standing policy or custom of inaction in this regard."

Here, Waite pleads generally that the municipal defendants

-10-

have a "policy, custom and practice . . . to harass, assault and further deprive African-Americans of their rights . . . ." There are, however, neither allegations of an official, written policy established by the Borough or the County, nor any allegations claiming that municipal policy makers were aware of or involved in the alleged mistreatment of African-Americans.

Significantly, the Complaint does not allege mistreatment of anyone other than Waite himself. At most, Waite's factual allegations support a finding that several of the defendants had a personal animus toward him. This is not enough. The Motion to Dismiss should be granted with respect to Beaver County and Borough of Ambridge.

### 2. <u>Count II- The Section 1985 Conspiracy Claims</u>

Defendants Tesla, Staub and Clements assert that Waite has failed to allege a conspiracy in violation of section 1985. The court agrees. The essential elements of a Section 1985 claim are: 1) a conspiracy; 2) motivated by racial or class-based discriminatory animus; 3) an act in furtherance of the conspiracy; and 4) an injury to a person or a deprivation of a right or privilege. <u>Lake v. Arnold</u>, 112 F.3d 682, 685 (3d Cir. 1997). In addition, a plaintiff asserting a violation of section 1985(3) must allege that "racial, or otherwise class-based, invidiously discriminatory animus lay behind the defendants' actions," and, most importantly in the context of this case, must "set forth facts from which a conspiratorial agreement between

the defendants can be inferred." Parrott v. Abramsen, 200 Fed. Appx. 163, 165 (3d Cir. 2006); see also Griffin v. Breckenridge, 403 U.S. 88, 102,(1971). "[M]ere conclusory allegations of deprivations of constitutional rights are insufficient." D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992). [4]

As the court noted in its discussion of Waite's section 1983 claims against the individual defendants, the allegations of conspiracy set out in the Complaint are almost entirely conclusory, and are insufficient to state a claim.  This conclusion applies to the section 1985 claims as well.


### 3. Count III - The Section 1986 Claim

Because Waite's Section 1986 claim is derivative of his Section 1985 claim, it, too, fails. Clark v. Clabaugh, 20 F.3d 1290, 1295 n. 5 (3d Cir. 1994).

---

4.  The Court of Appeals for the Third Circuit has yet to address specifically whether the decision in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993) (holding that heightened pleading standard does not apply to claims under section 1983),altered the specificity requirements applicable to claims resting on section 1985(3). The decision in Thomas v. Independence Tp.,463 F.3d 285 (3d Cir. 2006), however, effectively establishes that the more liberal standard of Fed. R. Civ. P. 8(a) controls. Courts applying the notice pleading standard embodied in that rule "have continued to consider issues of time and place, names of conspirators, conduct, and object and purpose in assessing the sufficiency of the complaint." DeJohn v. Temple Univ., No. 06-778, 2006 WL 2623274 at *5 n.10 (E.D. Pa. September 11, 2006).

### III. CONCLUSION

For the reasons set out above, it is respectfully recommended that the Motion to Dismiss filed on behalf of Defendants Beaver County, Kim Tesla, Timothy Staub and Kimberly Clements be (Doc. 40) be granted. For the same reasons, it is recommended that the claims against the Borough of Ambridge be dismissed.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by March 19, 2007. Responses are due March 29, 2007.


February 28, 2007


                                             /S/ Francis X. Caiazza
                                             Francis X. Caiazza
                                             United States Magistrate Judge


cc:
Counsel of Record
Via electronic mail